# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| **VENGROFF INVESTMENTS, LP,**<br><br>              **Plaintiff**<br><br>      **- versus -**<br><br>**Motor Yacht KAMELOT, Official Number 528568, her engines, boilers, machinery, anchors, gear, equipment, and all other appurtenances,** *in rem*<br><br>              **Defendant** | **<u>VERIFIED COMPLAINT</u>** |

Plaintiff, Vengroff Investments, LP, by and through its attorneys, Lennon, Murphy & Phillips LLC, as and for its Verified Complaint against the M/V KAMELOT, her engines, boilers, machinery, anchors, gear, equipment, and all other appurtenances, *in rem*, alleges upon information and belief as follows:

1.  This is an action within the admiralty and maritime jurisdiction of the Court pursuant to 28 U.S.C. § 1333, and this Verified Complaint states a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.  Plaintiff Vengroff Investments, LP ("Vengroff") is a limited partnership organized and existing under and by virtue of the laws of the State of Nevada, with an office and principal place of business at 5135 Riverwood Avenue, Sarasota, FL  34231. Vengroff is in the financial services business and *inter alia* makes loans to businesses and individuals for various purposes.

3.  The M/Y KAMELOT (ex-GARBO) is a 74-foot, motor yacht built in 1970, documented under the laws of the United States, bearing official number 528568 ("the Vessel").  The Vessel is

now physically located at Bridgeport Boatworks, LLC, 731 Seaview Ave, Bridgeport, CT 06607, within the jurisdiction of this Honorable Court.

4.   Venue is proper by reason of 28 U.S.C. § 1391(b)(2) in that the property that is the subject of the action is situated in the District, as aforesaid.

5.   By a Commercial Loan Note dated December 22, 2011, Vengroff loaned $255,000 to PDC Yachting Inc., the owner of the Vessel at that time, which loan was, by its terms, "secured by one or more security instruments" executed by the Borrower in favor of Vengroff. The Note was signed by Carl V. Johnson, III, director of PDC Yachting Inc.

6.   On the same day, Mr. Johnson and Cindy Curtis provided a Continuing Guaranty by which they guaranteed payment of the "Promissory Note" in the amount of $255,000, which is a reference to the aforementioned Commercial Loan Note.  Paragraph 3 of the Guaranty authorized the Lender to "[t]ake and hold security for the payment of this guaranty or the indebtedness guaranteed."

7.   Also on December 22, 2011, PDC Yachting Inc., as mortgagor, gave Vengroff, as mortgagee, a First Preferred Ship Mortgage on the Vessel, then named the GARBO, to Vengroff as security for the indebtedness evidenced by the Promissory Note executed that same day in the amount of $255,000. A copy of the Mortgage is annexed as Exhibit A to this Verified Complaint.

8.   According to a Bill of Sale dated July 30, 2012, Mr. Johnson and Ms. Curtis sold all the shares of PDC Yachting Inc. to Alexander Nathan. On November 5, 2012, an attempt was made to file with United States Coast Guard a Satisfaction of Mortgage in the amount of $10.00, apparently to relieve Johnson and Curtis as Mortgagors. However, the filing was rejected by the Coast Guard and the Mortgage continued in effect and remains in effect as against the Vessel.

9.   By a Commercial Loan Note (Replacement Note) effective July 27, 2012 that superseded and replaced the Commercial Loan Note from PDC Yachting Inc., Alexander Nathan promised to pay $255,000 to Vengroff, as Lender. The Replacement Note specifically provided that "[t]his Note and the obligations of Borrower hereunder is secured by that certain Mortgage ('Mortgage') encumbering the property described therein."

10.  By means of a Continuing Guaranty dated July 27, 2012, Mr. Nathan unconditionally guaranteed to Vengroff, as Lender, full payment and performance of the Replacement Note effective July 27, 2012, in the amount of $255,000.00.

11.  By means of a Purchase and Sale Agreement dated April 15, 2016, one Chet Dunican agreed to buy and Alexander Nathan agreed to sell the Vessel, still named GARBO, for $175,000.

12.  On April 23, 2016, Dunican, as Borrower, gave Vengroff, as Lender, a Promissory Note in the amount of $110,000, which Note provided as follows:

> 5.  All costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by the Lender in enforcing this Note as a result of any default by the Borrower, will be added to the principal then outstanding and will immediately be paid by the Borrower.
>
> 6.  This Note is given to secure the payment of the purchase price of the following security (the "Security"): 1970 74' Berger Yacht Fisherman, Official Coast Guard Doc# 528 568.
>
> 7.  Title to the Security will be transferred to the Borrower at execution of this Note. The Lender will retain a vendors' lien in the Security and the Borrower grants to the Lender a security interest in the Security until this Note is paid in full. The Lender will be listed as a lender on the title of the Security whether or not the Lender elects to perfect a seller's security interest in the Security.
>
> 8.  If the Borrower defaults in payment as required under this Note or after demand for ten (l0) days, the Security will be immediately provided to the Lender and the Lender is granted all rights of repossession as a secured party.

A copy of the April 23, 2016 Promissory Note is annexed as Exhibit B to this Verified Complaint.

13.  Dunican made certain payments to Vengroff but defaulted on the balance due under the April 23, 2016 Promissory Note, such that $96,178.72 in principal remains due and owing to Vengroff.  In addition, paragraph 5 of the Note specifically provides that "[a]ll costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by the Lender in enforcing this Note as a result of any default by the Borrower will be added to the principal then outstanding and will immediately be paid by the Borrower."

### Judgment against Chet Dunican

14.  On July 13, 2017, Vengroff filed a lawsuit against Mr. Dunican in the Circuit Court for the Twelfth Judicial District in and for the County of Sarasota, FL to recover the $96,178.72 Mr. Dunican owed Vengroff under the April 23, 2016 Promissory Note.

15.  Mr. Dunican appeared *pro se* in the action and filed an Answer and Counterclaim. However, he never appeared at any of the motion hearings in person or telephonically. The Florida Court ultimately entered Orders dismissing Mr. Dunican's Counterclaim and denying his Motion to Set Aside Summary Judgment.

16.  On January 17, 2018, the Court entered judgment in favor of Vengroff and against Mr. Dunican in the total amount of $102,487.19, consisting of $96,178.72 as the principal amount due under the April 23, 2016 Promissory Note plus $5,770.72 in interest and $537.75 in costs.

17.  Since Mr. Dunican is believed to be a resident of Connecticut, on October 1, 2018, Vengroff filed a Certification of Foreign Judgment in Connecticut Superior Court for the Judicial District of New London to have the Florida judgment recognized as a Connecticut judgment.

### Repossession of the M/V KAMELOT (ex-GARBO)

18.  By virtue of having the Florida judgment against Dunican recognized as a Connecticut judgment, Vengroff was entitled to have the judgment enforced against Mr. Dunican's property.

19.   Vengroff understands and believes that Mr. Dunican remains the beneficial owner of the Vessel.  As a result, on November 20, 2020, a Connecticut marshal seized the Vessel in order to give possession of the boat to plaintiff.

20.   Vengroff has paid the marshal's fees and, pursuant to Connecticut law, is now in lawful possession of the Vessel at Bridgeport Boatworks.

### Entitlement to Arrest the M/V KAMELOT

21.   On January 17, 2012, plaintiff filed the First Preferred Ship Mortgage (attached as Exhibit A to this Verified Complaint) with the National Vessel Documentation Center ("NVDC") operated and maintained by the United States Coast Guard at Falling Waters, West Virginia, and the record of the NVDC for the Vessel shows the name and official number of the vessel, the name of the parties to the Mortgage, the interest in the vessel mortgaged, and the original amount of the Note secured by the Mortgage.

22.   As a matter of law, a mortgagee under a First Preferred Ship Mortgage holds a maritime lien which it may assert against the subject vessel – in this case, the M/Y KAMELOT – by having the vessel arrested pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, annexed to the Federal Rules of Civil Procedure.

### Cause of Action Against the Vessel *In Rem*

23.   Plaintiff repeats and realleges each and every fact and allegation set forth in paragraphs 1 through 22 of this Verified Complaint with the same force and effect as if herein repeated and set forth at length.

24.   Mr. Dunican's obligation to pay Vengroff the balance that remains due under the April 23, 2016 Promissory Note is secured by the First Preferred Ship Mortgage that Vengroff holds against the Vessel.

25.  The encumbrance and right to foreclose embodied in the First Preferred Ship Mortgage are independent of whether Mr. Dunican is the owner of the Vessel.

26.  As a result of Dunican's failure to satisfy the indebtedness secured by the Mortgage, plaintiff Vengroff is entitled to have the Vessel arrested by the U.S. Marshal and thereby brought into the custody of this Honorable Court, thereafter to be advertised for sale and sold by judicial sale in accordance with Rule C of the Supplemental Rules for Admiralty or Maritime Claims.

27.  Specifically, plaintiff Vengroff is entitled to foreclose its maritime mortgage lien pursuant to the Maritime Lien Act and the Ship Mortgage Act, 46 U.S.C. §31301, *et seq*.

28.  Plaintiff Vengroff has duly performed all of its obligations under the terms of the First Preferred Ship Mortgage and the April 23, 2016 Promissory Note.

WHEREFORE, Plaintiff prays that:

1.  That process of arrest, in due form of law, according to the course and practice of this Honorable Court in causes of Admiralty and Maritime Jurisdiction within the meaning of the Constitution of the United States and Rule 9(h) of the Federal Rules of Civil Procedure, may issue against the Vessel M/Y KAMELOT and her engines, boilers, machinery, anchors, gear, equipment, and all other appurtenances as provided in Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, annexed to the Federal Rules of Civil Procedure, and that all persons claiming any interest in the Vessel may be cited to appear and answer the matters aforesaid, and that the Vessel, and her engines, boilers, machinery, anchors, gear, equipment, and all other appurtenances, may be seized, condemned and sold to pay the demands and claims aforesaid, with interest, costs, expenses and attorneys' fees, and that Plaintiff have such other and further or different relief as in law and justice they may be entitled to receive; and

2.   That notice of the commencement of this action in manner approved by the Court be given to the owner, custodian, master or other ranking officer of the yacht KAMELOT and to any person, firm or corporation which has recorded a notice of claim of any undischarged lien upon the Vessel; and

3.   That the Mortgage, be declared to be a valid and subsisting lien against the Vessel in the sum of $102,487.19, representing the balance due under the April 23, 2016 Promissory Note, plus interest and previously awarded costs, said lien to be prior and superior to the interest, liens, or claims of any and all other persons, firms or corporations whatsoever, except such persons, firms or corporations as may hold preferred maritime liens on the Vessel; and

4.   That Plaintiff is entitled to all available remedies under the Mortgage and the April 23, 2016 Promissory Note, including but not limited to recovery of all costs, expenses and expenditures including legal fees and disbursements incurred by Plaintiff in connection with this action; and

5.   That the yacht KAMELOT, and her engines, boilers, machinery, anchors, gear, equipment, and all other appurtenances be condemned and sold to pay the demands and claims aforesaid, with interest and costs, and that Plaintiff may become a purchaser at any sale of the mortgaged property and may credit bid indebtedness due under the April 23, 2016 Promissory Note at such sale; and

6.   That it be decreed that any and all persons, firms or corporations claiming any interest in the yacht KAMELOT are forever barred and foreclosed of and from all right or equity of redemption or claim of, in or to the mortgaged vessel and every part thereof; and

7.   That Plaintiff have such other and further or different relief as may be just and proper in the premises.

Dated:  Westport, CT
        December 4, 2020

                                  LENNON, MURPHY & PHILLIPS LLC
                                  Attorneys for Vengroff Investments, LP

By:  _____

                                     Charles E. Murphy

                                  1599 Post Road East
                                  Westport, CT  06880
                                  (203) 256-8600 – Tel.
                                  (203) 256-8615 – Fax
                                  cmurphy@lmplaw.net

## VERIFICATION UNDER PENALTY OF PERJURY

Pursuant to 28 U.S.C. § 1746, I, Robert Williams, verify under penalty of perjury that the following statements are true and correct:

1. I am the Chairman and Chief Executive Officer of Vengroff Williams & Associates and I hold a Power of Attorney to act for plaintiff Vengroff Investments LP in this matter;

2. I am familiar with the facts and circumstances of this matter as set forth in the foregoing Verified Complaint being filed with the Court in this action; and

3. The facts and allegations set forth in the Verified Complaint are true except for those matters alleged to be true upon information and belief and, as to those, I believe them to be true.

I verify under penalty of perjury that the foregoing is true and correct. Executed on the 4 day of December 2020.

_____
Robert Williams

# EXHIBIT A

## FIRST PREFERRED SHIP MORTGAGE

THIS FIRST PREFERRED SHIP MORTGAGE is made as of December 22, 2011, by PDC YACHTING INC., a Delaware corporation, having their principal office at P.O. Box 455, Charlestown, RI 02813 ("Mortgagor") in favor of VENGROFF INVESTMENTS, L.P., a Nevada limited partnership, having its principal office at 5135 Riverwood Avenue, Sarasota, Florida 34231 (the "Mortgagee").

## RECITALS

WHEREAS, The Mortgagor is the sole owner of the whole (100%) of the vessel GARBO, official number 528568, which is documented under and pursuant to the laws of the United States of America; and

WHEREAS, The Mortgagee has agreed to make a loan to the Mortgagor in an aggregate principal amount of $255,000.00 (the " Loan") pursuant to the promissory note of even date herewith (the "Note"), a copy of which is attached hereto as Exhibit "A" and incorporated by reference herein, with the same force and effect as if fully set forth herein. Capitalized terms not otherwise defined herein shall have the meanings provided in the Note; and

WHEREAS, the Mortgagor has duly authorized and directed the execution of this Mortgage as a first preferred ship mortgage on the said vessel under the provisions of Chapter 313 of Title 46 of the United States Code ("Chapter 313").

NOW, THEREFORE, in order to secure the due and punctual payment of all indebtedness evidenced by the Note (including without limitation interest thereon) and all other sums that may become payable and performance of all covenants and agreements under the Note (the "Secured Obligation"), and in consideration of the premises and in order to induce the Mortgagee to make or maintain the advance evidenced by the Note and in consideration of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

THE MORTGAGOR hereby grants, bargains, sells, conveys, transfers, assigns, pledges, grants a security interest in, sets over, hypothecates and mortgages unto the Mortgagee, its successors and assigns, the whole (100%) of the vessel GARBO, official number 528568, which is documented under and pursuant to the laws of the United States of America, together with all of its engines, boilers, machinery, covers, masts, bowsprits, boats, spars, anchors, cables, chains, rigging, tackle, capstans, fittings, tools, pumps and pumping equipment, gear, apparel, furniture, equipment, spare parts, supplies, accessions and accessories and all other appurtenances thereunto appertaining and belonging, whether now owned or hereafter acquired, whether on board or not and also any and all additions, improvements and replacements hereafter made in, for or to such vessel, or any part thereof, or in or to its equipment and appurtenances aforesaid, and all earnings, hire, freight or other monies obtained through the use and operation thereof and all proceeds of the foregoing (all of the foregoing referred to herein as the "Vessel");

TO HAVE AND TO HOLD the Vessel unto the use and benefit of Mortgagee, its successors and assigns, and to their own use and benefit forever;

PROVIDED, HOWEVER, that if Mortgagor shall pay or cause to be paid in full to Mortgagee all outstanding and unpaid Secured Obligation, then upon payment by the Mortgagor of any recording or other fees attendant to filing the satisfaction of this Mortgage with the United States Coast Guard and thenceforth this Mortgage and everything herein contained shall cease and be null and void; otherwise this Mortgage shall be and remain in full force and effect; and

FURTHER PROVIDED, HOWEVER, that the Vessel is mortgaged to the Mortgagee subject to the following further representations, warranties, covenants, agreements, conditions and provisions of this Mortgage.

ARTICLE I

<u>REPRESENTATIONS AND WARRANTIES</u>

The Mortgagor hereby represents, warrants, covenants and agrees as follows:

1.1   <u>Mortgage is Legal, Valid and Binding</u>.   This Mortgage constitutes a legal, valid and binding obligation of Mortgagor and, upon the filing hereof with the United States Coast Guard National Vessel Documentation Center, creates a first preferred ship mortgage in the Vessel which is enforceable against Mortgagor in accordance with its terms.

1.2   <u>Title to Vessel</u>.  The Mortgagor is the sole, true and lawful owner and is lawfully possessed of the Vessel, and the Mortgagor owns all right, title and interest in and to the Vessel free and clear of all complaints in rem, libels, liens (maritime or otherwise), charges, claims, security interests, mortgages or other encumbrances of any kind or nature.

1.3   <u>Citizen of United States</u>.  Mortgagor is a citizen of the United States within the meaning of Section 2 of the Shipping Act, 1916, as amended, for the purpose of operating the Vessel in the U.S. coastwise trade and is entitled to own and operate the Vessel in the U.S. coastwise trade under its Certificate of Documentation.

ARTICLE II
COVENANTS

Mortgagor covenants and agrees as follows:

2.1   <u>Covenants in Loan Documents</u>.   Mortgagor will fully perform all covenants, agreements, obligations and conditions required of Mortgagor in the Loan Documents to which the Mortgagor is a signatory.

2.2   <u>Maintain Citizenship and Documentation of Vessel</u>.  The Mortgagor will at all times maintain the Vessel, so long as it shall be subject to the lien hereof, as a vessel of the United States and shall maintain the documentation of the Vessel under the laws of the United States, and shall maintain the same hailing port for the Vessel as set forth in its current Certificate of Documentation unless a change of said port is authorized by the Mortgagee. Mortgagor shall continue to be a citizen of the United States entitled to own and operate the Vessel in the U.S. coastwise trade under its Certificate of Documentation, which Mortgagor shall maintain in full force and effect.

2.3   <u>Title to Vessel</u>.  Except to the limited extent permitted under Section 2.11 of this Mortgage, Mortgagor shall continue to own and possess the whole of the Vessel free from all complaints in rem, libels, liens (maritime or otherwise), charges, claims, security interests, mortgages, pledges or other encumbrances of any kind or nature.  The Mortgagor hereby does and will forever warrant and defend the title and possession of the Vessel, and each part thereof, for the benefit of the Mortgagee, against any and all claims and demands whatsoever.

2.4   <u>Preservation of Mortgage Lien</u>.  The Mortgagor will comply with and not permit the Vessel to be operated contrary to applicable law, including without limitation Chapter 313, and will take any and all such other action as may be required from time to time in order to establish and maintain this Mortgage as a valid and perfected first preferred ship mortgage under Chapter 313 on the Vessel in accordance with the terms hereof.

2.5   <u>Transfer of Vessel</u>.  The Mortgagor shall not sell or transfer the Vessel, or place or permit the Vessel to be placed under any foreign registration or flag or change the hailing port of the Vessel, or do or suffer or permit anything to be done, including placing the Vessel under charter, which would or might adversely affect the registration or documentation of the Vessel under the laws or regulations of the United States, without the prior written consent of the Mortgagee.

2.6     <u>Taxes</u>. The Mortgagor will from time to time pay or discharge or cause to be paid or discharged, as they become due and payable, all taxes, assessments, and governmental charges levied or assessed or imposed upon the Vessel.

2.7     <u>Seizure of Vessel</u>. If the Vessel shall at any time, while subject to the lien hereof, be libeled, seized, detained, levied or attached under process or color of legal authority for any cause whatsoever, the Mortgagor will forthwith notify the Mortgagee in writing and, without expense to the Mortgagee, within fourteen (14) days from the time of such libel, seizure, detention, levy or attachment, either cause the Vessel to be released by filing an undertaking or stipulation or otherwise as may be lawfully permitted or furnish the Mortgagee additional security of a value acceptable to the Mortgagee. If the Mortgagor shall fail or neglect to furnish additional security to the Mortgagee or otherwise to release the Vessel from libel, seizure, detention, levy or attachment, the Mortgagee may (but need not) furnish security to release the Vessel, and if, as a result of such libel, seizure, detention, levy or attachment, the Vessel shall be sold at a marshal's sale or otherwise under legal process, any insurance money, excess proceeds and other sums recoverable with respect to the Vessel shall be paid to the Mortgagee and shall be applied against the Secured Obligations.

2.8     <u>Insurance</u>. Mortgagor will insure the Vessel making all loss payable to Mortgagee as its interest may appear and providing that the insurance, as to the interest of Mortgagor therein, shall not be invalidated by any act or neglect of Mortgagor. Mortgagor will purchase such insurance policies from a good and responsible insurance company acceptable to Mortgagee for the full insurable value of the Vessel, and will deliver all such policies and renewals thereof to Mortgagee. In the event any sum of money becomes payable under the policies described in this paragraph, or any sum of money becomes payable by third persons or their insurance companies because of loss or damage to the Vessel, such sum shall be applied either in the reduction of the Secured Obligations, applying the same to the payments last due under the Note, or in restoration of the Vessel, as Mortgagee may elect. All such policies shall provide that the Mortgagee will receive at least thirty (30) days prior written notice of cancellation or material amendment. If Mortgagor shall fail to insure the Vessel as required under the terms of this paragraph, Mortgagee may do so and charge Mortgagor therefore.

2.9     <u>Operation and Maintenance of Vessel</u>. The Mortgagor will operate or take all actions necessary to cause the Vessel to be operated in full  compliance with (a) each applicable law, treaty, convention, order, rule or regulation of the United States, any state or any other jurisdiction (foreign or otherwise) wherein operated or any department or agency thereof, including without limitation the Federal Maritime Commission, the U.S. Maritime Administration, the United States Department of Transportation, the United States Coast Guard, the Bureau of Customs, the United States Department of the Treasury and the Federal Communications Commission.   The Mortgagor will not remove the Vessel from the limits of the United States. The Mortgagor will at all times and at its own cost and expense maintain and preserve the Vessel in good condition, working order and repair, ordinary wear and tear excepted, and will cause the Vessel to be kept fully equipped and such equipment to be kept in good condition, working order and repair, ordinary wear and tear excepted.

2.10    <u>Creation of Liens</u>. Neither the Mortgagor nor any other Person (including without limitation any master or charterer of the Vessel) has or shall have any right, power or authority to create, incur or permit to be placed or imposed upon the Vessel, or any part thereof, or any of its freights, profits or hire, any lien whatsoever other than (a) the lien of this Mortgage or other liens in favor of Mortgagee, (b) liens for damages arising out of maritime tort, (c) liens for wages of the crew of the Vessel, (d) liens for general average or salvage (including contract salvage), (e) liens for wages of stevedores when employed directly by a person listed in 46 U.S.C. (S) 31341, or (f) maritime and other liens for repair, services, and supplies to the Vessel arising in the ordinary course of business; provided, however, that any permitted lien for repairs, services or supplies under subsection (f) above shall be subject and subordinate to the lien of this Mortgage. The Mortgagor shall, no later than 30 days after they become liens on the Vessel, pay, satisfy or discharge any

and all liens of the types described in clauses (b), (c), (d) and (e) of this Section unless such liens are covered by valid policies of insurance held by the Mortgagor and meeting the requirements of Section 2.8 hereof.

2.11    Requisition of Title to Vessel.   In the event that title or ownership of the Vessel shall be requisitioned, purchased or taken by any government of any country or any agent thereof, the lien of this Mortgage shall be deemed to attach to the claim for compensation and the compensation, purchase price, reimbursement or award shall be payable to the Mortgagee. The Mortgagor shall promptly execute and deliver such documents, if any, and shall promptly do and perform such acts, if any, as in the opinion of the Mortgagee may be necessary or useful to facilitate or expedite the collection by the Mortgagee of such compensation, purchase price, reimbursement or award.

2.12    Notice of Loss or Adverse Claim.   Mortgagor shall forthwith give notice by letter and telecopy to the Mortgagee in the event of (a) the actual total loss of the Vessel (b) any requisition of the use of or title to, or seizure or forfeiture of, the Vessel by any governmental authority or any other party, or the attachment, levying upon, filing of an action in rem against, detention, sequestration or taking into custody of the Vessel in connection with any proceeding, (c) any marshal's or other sale of the Vessel, or (d) any casualty, accident or damage to the Vessel involving an amount in excess of $20,000.

2.13    Copies of Mortgage and Notice.   Mortgagor shall carry, or cause to be carried, a certified copy of this Mortgage and of any amendments and supplements hereto, or assignments hereof, with the Vessel's documents and on board the Vessel with the ship's papers and will exhibit the same or cause the same to be exhibited, on demand, to any Person having business with the Vessel and to any representative of the Mortgagee. Unless otherwise approved by the Mortgagee, a notice reading as follows, printed in plain type of such size that it shall cover a space not less than six inches wide by nine inches high, protected from exposure to the elements, shall be kept prominently displayed in the wheelhouse and in the Captain's cabin on the Vessel:

---

### NOTICE OF MORTGAGE

This Vessel is covered by a First Preferred Ship Mortgage from PDC Yachting Inc, the Mortgagor, to VENGROFF INVESTMENTS, LP, the Mortgagee.

---

2.14    Further Action.   From time to time Mortgagor shall, and the Mortgagee may on behalf of Mortgagor, execute and deliver such other and further instruments and assurances and take such other actions as in the opinion of Mortgagee's counsel may reasonably be required to subject the Vessel more effectually to the lien hereof and to the payment of the Secured Obligations and for operation of the Vessel as herein provided, and (in case of an Event of Default) to effectuate sales as provided in Article III hereof.

ARTICLE III
DEFAULT

3.1    Events of Default.   If the Mortgagor shall fail to perform any covenant herein contained and such failure shall continue for a period of five (5) days after the Mortgagor obtains notice thereof the same shall be a default under this agreement (an "Event of Default").

3.2    Remedies.   If an Event of Default shall have occurred and be continuing, then the Mortgagee may, in every case and concurrently or separately:

(a)   Exercise all the rights and remedies provided (i) under this Mortgage; (ii) in foreclosure and otherwise given to mortgagees by the provisions of Chapter 313 and acts amendatory thereof and supplementary thereto; and (iii) to the extent not preempted by federal law, to a secured party when a debtor is in default under a security agreement by the Indiana Uniform Commercial Code;

(b)   Exercise any other right or remedy provided by law or agreement, including without limitation the right to recover deficiency or other judgment for any amount due hereunder;

(c)   Take and enter into possession of the Vessel, at any time, wherever the same may be, without legal process and without being responsible for loss or damage, and the Mortgagor or other person in possession shall forthwith, upon demand of the Mortgagee, surrender to the Mortgagee possession of the Vessel and the Mortgagee may, without being responsible for loss or damage except in case of the Mortgagee's own gross negligence, willful misconduct or bad faith, hold, lay up, lease, charter, operate or otherwise use the Vessel for such time and upon such terms as it may deem to be for its best advantage, accounting only for the net profits, if any, arising from such use of the Vessel and charging upon all receipts from the use of the Vessel or from any sale thereof or from the exercise of any of the powers conferred by subparagraph (e) next following, all costs, expenses, charges, damages or losses by reason of such use and with the right to dock the Vessel free of charge at the Mortgagor's dock located at Longboat Key Moorings, Longboat Key, Florida (or elsewhere at Mortgagor's expense);

(d)   Demand, collect, receive, compromise and sue for, so far as may be permitted by law, in the name of the Mortgagor, all earnings, revenues, income and profits of the Vessel, all amounts due from insurers under any insurance thereon as payments of losses or as return premiums or otherwise, all salvage awards and recoveries, all recoveries in general average or otherwise, and all other sums due or to become due in respect of the Vessel, or in respect of any insurance thereon, from any person whomsoever, and to make, give and execute in the name of the Mortgagor acquittances, receipts, releases or other discharges for the same, and to endorse and accept in the name of the Mortgagor all instruments in writing with respect to the foregoing, and the Mortgagor does hereby irrevocably appoint the Mortgagee the true and lawful attorney-in-fact of the Mortgagor, upon the happening of an Event of Default, to do all said acts; and

(e)   Take and enter into possession of the Vessel at any time, wherever the same may be, without legal process and, if it seems desirable to the Mortgagee and without being responsible for loss or damage except in case of the Mortgagee's own gross negligence, willful misconduct or bad faith, sell the Vessel upon such terms and conditions as the Mortgagee may determine, free from any claim of or by the Mortgagor, at a public sale or sales after advertisement or at a private sale or sales after notice to the Mortgagor, at any place as the Mortgagee may specify and in such commercially reasonable manner as the Mortgagee may deem advisable.

In any suit to enforce its rights, powers or remedies, the Mortgagee shall be entitled as a matter of right (i) to the appointment of a receiver or receivers of the Vessel and the earnings thereof with full rights and powers to use and operate the Vessel, and (ii) to a decree ordering and directing the sale and disposition of the Vessel. The Mortgagee may become the purchaser at the said sale, and the Mortgagee shall have the right to credit on the purchase price any and all sums of money due to the Mortgagee hereunder.

Each and every right and remedy provided in this Section 3.2 shall be cumulative and in addition to every other remedy given hereunder or otherwise existing.  The exercise of any right or remedy shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other right or remedy.  No waiver, delay or omission by the Mortgagee in the exercise of any right or remedy accruing upon any Event of Default shall impair the Mortgagee's right to exercise such

right or remedy or be construed to be a waiver of any such Event of Default or to be any acquiescence therein. Nothing contained herein shall limit any rights or remedies available to the Mortgagee under the Loan Documents, regardless of the existence of an Event of Default.

Nothing in this Section 3.2 shall be interpreted in such manner as to permit the Mortgagor to act unreasonably or exercise any remedies contrary to applicable law.

3.3     Advances and Entry by Mortgagee.   If the Mortgagor shall default in the performance or observance of any of the covenants in this Mortgage, the Mortgagee may, in its discretion, do any act or make any expenditures Mortgagee deems necessary or appropriate to remedy such default or protect Mortgagee's rights, including, without limitation of the foregoing, the obtaining of insurance, the payment and discharge of taxes and liens, entry upon the Vessel to make repairs (and for that purpose docking and maintaining the Vessel) and defending suits.  The Mortgagee shall reimburse the Mortgagee on demand, with interest at the Default Rate for any and all reasonable expenditures so made or incurred.   Until the Mortgagor has so reimbursed the Mortgagee for such expenditures, advances and expenses, the amount thereof shall be a debt due from the Mortgagor to the Mortgagee, and payment thereof shall be secured by the lien of this Mortgage.

ARTICLE IV
MISCELLANEOUS

4.1     Notices.  All notices provided for herein shall be deemed to have been given (unless otherwise required by the specific provision hereof in respect of any matter) when sent to the addresses first above written via first class U.S. mail.

4.2     Other Security.   This Mortgage is given to secure the Secured Obligations in addition to other security and/or guaranties that may now or hereafter secure the Secured Obligations.   The Mortgagee shall have no duty to exercise its rights or remedies under either this Mortgage or any other security or guaranty in any particular order, and the Mortgagor waives any right to require any marshalling of assets.

4.3     Invalidity of Any Provision.   If any provisions hereof shall be held invalid or unenforceable according to law, the remaining provisions hereof shall not be affected thereby and shall continue in full force and effect.

4.4     Successors and Assigns.  All the covenants, stipulations, promises and agreements contained in this Mortgage shall bind and inure to the benefit of the Mortgagor and the Mortgagee and their respective successors and assigns; provided, however, that nothing in this Section shall be deemed to permit any sale or transfer of the Vessel otherwise prohibited hereunder.

4.5     No Waiver.  No provision of this Mortgage or any other document and none of the actions or omissions to act by the Mortgagee contemplated thereby shall be deemed to or shall constitute a waiver by the Mortgagee of the preferred status of this Mortgage or of any of the benefits, privileges or provisions given by Chapter 313.

4.6     Governing Law.

This Mortgage shall be governed by and construed in accordance with the general maritime law of the United States and, to the extent not permitted by such general maritime law, the law of the State of Florida.

4.7     Amount and Maturity Date of Mortgage.  For the purpose of recording this Mortgage as required by Chapter 313, (i) the total amount of the direct or contingent obligations that are or may be secured by this Mortgage is $255,000.00, excluding interest, expenses and fees and any other amounts for which the Mortgagee may become liable in connection with the performance of

Mortgage covenants, (ii) the maturity date is December 1, 2013, and (iii) the discharge amount is the same as the total amount.  There is no separate discharge amount for property other than the Vessel.

IN WITNESS WHEREOF the Mortgagor has caused this First Preferred Ship Mortgage to be executed in its name by a duly authorized officer as of the date above written.

WITNESSES:

Print Name: _Gail Vakalis_

Print Name: _Lori Rossignol_

PDC YACHTING INC., a Delaware corporation

BY: _____

AS: CARL V. JOHNSON, III, Director

STATE OF ~~FLORIDA~~ RHODE ISLAND
~~COUNTY OF SARASOTA~~

I HEREBY CERTIFY that the foregoing was acknowledged before me this 21st day of December, 2011, by CARL V. JOHNSON, III, as Director of PDC Yachting, Inc. a Delaware corporation, who is personally known to me: _____ or who has produced a Driver's License as identification: RI DL

_Lori Threlfall_

(Type, Print or Stamp Name)

(NOTARIAL SEAL)

I am a Notary Public in and for the State of ~~Florida~~ RHODE ISLAND and my commission expires: _08-04-2012_

# EXHIBIT B

# PROMISSORY NOTE

**Borrower:**      Chet Dunican of 208 Old Black Point Rd, Niantic CT 06357 (the "Borrower")

**Lender:**        Vengroff Investments LP, 5135 Riverwood Ave, Sarasota  FL 34231

**Principal Amount:**    $110,000.00 USD

1. FOR VALUE RECEIVED, The Borrower promises to pay to the Lender at such address as may be provided in writing to the Borrower, the principal sum of $110,000.00 USD, with interest payable on the unpaid principal at the rate of 6.00 percent per annum, calculated on a 15-year basis. (Or yearly not in advance).

2. This Note will be repaid in consecutive monthly installments of $928.24 each commencing on June 1st, 2016 and continuing on the first of each following month with the balance then owing under this Note of $96,049.65 being paid on May 1st, 2019.

3. At any time while not in default under this Note, the Borrower may pay the outstanding balance then owing under this Note to the Lender without further bonus or penalty.

4. Notwithstanding anything to the contrary in this Note, if the Borrower defaults in the performance of any obligation under this Note, then the Lender may declare the principal amount owing and interest due under this Note at that time to be immediately due and payable.

5. All costs, expenses and expenditures including, and without limitation, the complete legal costs incurred by the Lender in enforcing this Note as a result of any default by the Borrower, will be added to the principal then outstanding and will immediately be paid by the Borrower.

6. This Note is given to secure the payment of the purchase price of the following security (the 'Security'): 1970 74' Berger Yacht Fisherman, Official Coast Guard Doc # 528 568.

7. Title to the Security will be transferred to the Borrower at execution of this Note. The Lender will retain a vendors' lien in the Security and the Borrower grants to the Lender a security interest in the Security until this Note is paid in full. The Lender will be listed as a lender on the title of the Security whether or not the Lender elects to perfect a seller's security interest in the Security.

8. If the Borrower defaults in payment as required under this Note or after demand for ten (10) days, the Security will be immediately provided to the Lender and the Lender is granted all rights of repossession as a secured party.

9. If any term, covenant, condition or provision of this Note is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the parties' intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Note will in no way be affected, impaired or invalidated as a result.

10. This Note will be construed in accordance with and governed by the laws of the State of Florida.

11. This Note will enure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns of the Borrower and the Lender. The Borrower waives presentment for payment, notice of non-payment, protest and notice of protest.

IN WITNESS WHEREOF the parties have duly affixed their signatures under seal on this 23ʳᵈ day of April, 2016.

**SIGNED, SEALED, AND DELIVERED**
this 23ᴿᴰ day of April, 2016.

_____
Chet Dunican

**SIGNED, SEALED, AND DELIVERED**
this 23      day of APRIL, 2016.

_____
Harvey Vengroff (for Vengroff Investments)

## NOTARY ACKNOWLEDGMENT - BORROWER

STATE OF FLORIDA

COUNTY OF Sarasota

The foregoing instrument was acknowledged before me this 23ᴿᴰ day of April, 2016, by Chet Dunican, who is personally known to me or who has produced _____ as identification.

_____
Notary Public

Audrey MA Abraham
(print name)

AUDREY MA ABRAHAM
Notary Public - State of Florida
My Comm. Expires Sep 6, 2018
Commission # FF 152158
Bonded Through National Notary Assn.